Argued October 23, affirmed December 22, 1975, reconsideration
denied January 28, petition for review denied March 9, 1976

STATE OF OREGON, *Respondent, v.* ROBERT
CHARLES AKRIDGE (No. 74-613-C, CA 4341),
*Appellant.*

543 P2d 1073

*J. Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and LEE, Judges.

LEE, J.

Defendant appeals from his conviction of murder per ORS 163.115.

Defendant's first assignment of error is that the trial court incorrectly instructed the jury on the phrase "extreme emotional disturbance." ORS 163.-125(1)(b) provides:

"(1) Criminal homicide constitutes manslaughter when:

"* * * * *

"(b) A homicide which would otherwise be murder is committed under the influence of extreme emotional disturbance, which disturbance is not the result of his own intentional, knowing, reckless or criminally negligent act, and for which disturbance there is a reasonable explanation * * *."

The court's instruction on this point[1] in part stated

---

[1] "[THE COURT:] The defendant has introduced evidence to show that if the defendant did in fact commit a homicide

that "in determining what the term 'extreme' means with reference to extreme emotional disturbance, I instruct you that the term means the *outermost* or *furthest; most remote in any direction; final; or last.*" (Emphasis supplied.)

Defendant took exception on the basis that "ex-

---

as charged, he did so while he was under the influence of an extreme emotional disturbance. The prosecution has the burden of proving beyond a reasonable doubt that the defendant was not under the influence of an extreme emotional disturbance.

"Where the intent to kill is formed under the influence of an extreme emotional disturbance, then the defendant is not guilty of murder but only manslaughter.

"You are instructed that there are varying degrees of emotional disturbances. Not every disturbance is an extreme emotional disturbance under the law. In determining what the term 'extreme' means with reference to extreme emotional disturbance, I instruct you that the term means the *outermost or furthest; most remote in any direction; final; or last.*

"The mental ability to know the difference between right or wrong is not material in determining whether a defendant is under the influence of an extreme emotional disturbance.

"A defendant under the influence of an extreme emotional disturbance still may know that the act he commits is wrong.

"The issue of extreme emotional disturbance is not to be confused with the defense of mental defect or disease, which latter defense exonerates a defendant from the charge. One does not have to have a mental disease to be under the influence of an extreme emotional disturbance. A defendant who kills another under the influence of an extreme emotional disturbance is not exonerated from the charge but is guilty of manslaughter instead of murder.

"In relation to the reasonableness of explanation for extreme emotional disturbance associated with manslaughter, I instruct you that such reasonableness is to be determined by you, if you find such consideration is applicable, from the standpoint of an ordinary person who was in the defendant's situation under the circumstances as the defendant reasonably believed them to be at the time and place of the occurrence charged in the indictment."

treme does not mean to the utmost or furthest extent, but that extreme in connection with this statutory definition means a great degree or a degree in excess of moderate, not to the utmost."

"It is an elementary rule of construction that the failure of a statute or rule to define a term used therein calls for application of the term's natural, plain and obvious meaning." *Piazza v. Clackamas Water District,* 21 Or App 469, 535 P2d 554 (1975). A dictionary definition of "extreme" is:

"1. at the end or outermost point; farthest away; most remote; utmost.

2. last; final.

3. going to great lengths; in or to the greatest degree; very great or greatest; excessive; immoderate: as *extreme* poverty.

4. advanced; radical: as, *extreme* views.

5. very severe; drastic." Webster's New World Dictionary of the American Language, College Edition (1968) at 517.

■ Since no definition of "extreme" or "extreme emotional disturbance" is provided by statute, the trial court was correct in using the customary meaning.

Defendant's second assignment of error is that the court granted the state's motion to make a psychiatric examination of the defendant during trial.

ORS 163.135(4) provides:

"After the defendant files notice as provided in this section, the *state shall* have the right to have at least one psychiatrist of its selection examine the defendant in the same manner and subject to the same provisions as provided in ORS 161.315." (Emphasis supplied.)

■ Defendant had testified in his own behalf concerning events before, during and after the killings, and

about his emotional condition at the time of the killings. The motion for defendant's psychiatric examination was made after completion of his direct examination and was conducted by the state's psychiatrist after adjournment, that evening in the presence of his psychiatrist and his attorney. Defendant concedes that the state had a right to psychiatrically examine him but insists that the statute did not contemplate that such examination be allowed after trial had begun. We find no error in allowing the state to so exercise its statutory right to psychiatric examination.

■ Defendant's third assignment is that the trial court erred in refusing testimony from a witness called by the defense, during its case-in-chief, concerning a conversation heard between the state's key witness, Paul Jackson, and the district attorney. In the offer of proof, the witness testified that on the day after the murders she heard the district attorney tell Jackson *inter alia* that "if he turned State's evidence that he would be taken care of, his things and him would be taken care of."[2]

■ It is the general rule that it is permissible to show bias or interest of an adverse witness. *Clevenger v. Schallhorn,* 205 Or 209, 215, 286 P2d 651 (1955). How-

---

[2] The full testimony on this point was as follows:

"A  And D. A. Burrows took P. J. to his—to the side and started talking to P. J., and then they asked, D. A. Burrows asked P. J. to go to a black car that was there, and that they wanted to talk in privacy, and he was telling P. J. that if he turned State's evidence that he would be taken care of, his things and him would be taken care of.

"Q  Was P. J., Paul Jackson, doing anything unusual when you observed this scene?

"A  Well, he had a cup in his hand, and ice. He was drinking booze.

"Q  Do you recall what time of day this was?

"A  It was in the morning. I really couldn't tell the time, because we don't have no time up there.

ever, it is also required in most jurisdictions that the witness himself *first* be offered an opportunity to give his version of what happened. McCormick, Evidence 80, § 40 (hornbook series, 2d ed 1972). Such is the rule in Oregon. *State v. Holbrook,* 98 Or 43, 188 P 947, 192 P 640, 193 P 434 (1920).

Affirmed.

---

"Q   How far away were you from Mr. Burrows when you heard this conversation?

"A   About 10, maybe 15 feet at the most from him.

"Q   When you heard this conversation was Mr. Burrows addressing you or Mr. Jackson?

"A   He was addressing P. J. first, and then he turned to me and he said that P. J. had turned State evidence and that he was going to take care of P. J.'s things, because we had offered to take care of his things, and he said that he'd take care of P. J.'s dog and his things.

"Q   Did he say anything about taking care of P. J.?

"A   Yes.   He said he'd take care of P. J. and make sure everything would be okay with him."