522 A.2d 394

**Steven Tyrone PETTIE**

v.

**STATE of Maryland.**

**No. 803, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

March 11, 1987.

Gary S. Offutt, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on the brief), for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore and M. Kenneth Long, State's Atty., Hagerstown, for Washington County and Mary Ann Day, Asst. State's Atty., Hagerstown, for Washington County, on the brief), for appellee.

Argued before BISHOP, ROBERT M. BELL and POLLITT, JJ.

POLLITT, Judge.

Steven Tyrone Pettie, an inmate at the Maryland Correctional Training Center, was convicted by a jury in the Circuit Court for Washington County of second degree sexual offense, sodomy and battery, committed upon one Robert Butts, another inmate at the institution. Judge Daniel W. Moylan imposed concurrent sentences of 20 years imprisonment for the second degree sexual offense, and five years for the battery, both to be served consecutively to any sentence Pettie was then serving. The sodomy conviction was merged into the second degree sexual offense. On appeal, Pettie presents two questions:

I. Whether the trial court improperly excluded extrinsic evidence that the prosecuting witness had been told by police that he would be charged with making a false report and perjury if he changed his statement concerning the incident?

II. Whether the trial court erred by admitting evidence of appellant's attempted suicide?

We shall answer both questions in the negative and affirm the judgments.

The victim testified that at approximately 1:30 p.m. on December 19, 1984, appellant entered his cell and threatened him with a knife if he did not submit to appellant's sexual demands. Under the threat of the knife, Butts was sodomized. At about 5:10 p.m., Butts reported the assault and asked for protective custody. He did not, at that time, report the sodomy.

Officer Donald Roy Hunter, a correctional officer at the institution, was allowed to testify, over the objection of the appellant, that at 10:40 p.m., approximately five and one-half hours after the incident was reported, appellant had attempted to commit suicide by slashing his left wrist.

Approximately one and a half to two months later, in February of 1985, Butts finally reported the sodomy to the authorities. After an investigation, charges were brought against the appellant.

Appellant called as his only witness the investigating officer, Trooper Harry V. Smith of the Maryland State Police. He attempted to introduce a part of Trooper Smith's report which would discredit Butts' testimony by showing bias or motive to commit perjury. In sustaining the State's objection to the introduction of this evidence, the following colloquy occurred at the bench:

MR. STRONG [appellant's counsel]: Your Honor, I would proffer that Trooper Smith would testify that in interviewing Mr. Butts, that he, would be required to give a statement under the penalties of perjury and to testify in court; that Trooper Smith also advised Mr. Butts if, at any time, he decided to drop the charges or refused to testify in court that he would be charged with false statement to a police officer, perjury and the false report of a crime. I submit, Your Honor, that Mr. Butts is locked in because of these representations and we are entitled to bring it forth to the Jury.

MS. DAY [State's Attorney]: I submit that's prejudicial, that that is the policy on every inmate case that they are advised in that fashion and that to bring that out would simply be, that's not anything that's under Mr. Butts' control and to bring that out would be prejudicial to the case and to make Mr. Butts look in a bad light for a thing he had no responsibility for, no in-put to.

MR. STRONG: I think it's clear where there are already prior inconsistent statements on Mr. Butts such as this . . .

THE COURT: Well, if you want to bring up prior inconsistent statements, that's fine, but what do you want to bring out?

MR. STRONG: That Mr. Butts was basically told that having made or about to make this statement which he is now, Mr. Butts is testifying to, that he was told that if he changes his testimony in any way, he will be charged with perjury and false report.

MS. DAY: (Inaudible).

MR. STRONG: I'm saying that Butts is now locked in and has no options.

THE COURT: (Inaudible).

MR. STRONG: I would proffer ...

THE COURT: I don't follow. I'll certainly allow you to question concerning prior inconsistent statements (inaudible), but I think what you want to bring out here are prejudicial but I don't see any relevance to it. I thing [sic] its confusing. Alright.

## I

Generally, matters which affect the interest, bias, hostility, or motives of a witness are always relevant and, therefore, extrinsic evidence is admissible in order to impeach a witness on these grounds. *Biggs v. State*, 56 Md.App. 638, 645–46, 468 A.2d 669, 672 (1983), *cert. denied*, 299 Md. 425, 474 A.2d 218 (1984). Evidence of the interrogation where Trooper Smith stated that if Butts "decided to drop the charges or refused to testify in court that he would be charged with false statement to a police officer, perjury and the false report of a crime," would affect the interest, bias, or motives of the witness and therefore would be relevant and admissible. The State concedes this general proposition. Appellee posits in its brief, however, that "before sojourning into the realm of extrinsic evidence that could possibly have an impeachment effect, a foundation is first required."

■ As stated by this Court in *Robinson v. State*, 47 Md.App. 558, 572, 425 A.2d 211, 219 (1981), "Appellant's argument implicitly assumes that the entire basis for the State's general objection and the trial court's accompanying sustension was relevancy." The State's objection, however, was that the proffered evidence was "prejudicial." We do not believe that characterizing something as "prejudicial" is an effort to specify a particular basis for an objection. *von Lusch v. State*, 279 Md. 255, 264, 368 A.2d 468, 473 (1977). As the State was not requested to give reasons for the

objection, there was no waiver of its right to challenge the evidence on the basis that no proper foundation was laid.

While Maryland courts have required such a foundation where the proposed impeachment is through the use of a prior inconsistent statement, *State v. Kidd,* 281 Md. 32, 46, 375 A.2d 1105, 1114, n. 8, *cert. denied,* 434 U.S. 1002, 98 S.Ct. 646, 54 L.Ed.2d 498 (1977), *Funkhouser v. State,* 51 Md.App. 16, 26, 440 A.2d 1114, 1120, *cert. denied,* 293 Md. 331 (1982), we have been referred to no Maryland cases on the specific issue of whether cross-examination is a prerequsite to the introduction of extrinsic evidence of bias. Courts which have decided the issue are divided. As stated in *McCormick on Evidence* § 40 (2d ed. 1972):

> A majority of the courts impose the requirement of a foundation question as in the case of impeachment by prior inconsistent statements. Before the witness can be impeached by calling other witnesses to prove acts or declarations showing bias, the witness under attack must first have been asked about these facts on cross-examination. A minority decline to impose this requirement. Fairness to the witness is most often given as the reason for the requirement, but the saving of time by making unnecessary the extrinsic evidence seems even more important. Some courts, adhering to the analogy of inconsistent statements, make a difference between declarations and conduct evidencing bias, requiring the preliminary question as to the former and not as to the latter. But as suggested in a leading English case, words and conduct are usually intermingled in proof of bias, and "nice and subtle distinctions" should be avoided in shaping this rule of trial practice. Better require a "foundation" as to both or neither....

For cases imposing the requirement of a foundation, *see U.S. v. Harvey,* 547 F.2d 720 (2d Cir.1976); *State v. Bell,* 488 So.2d 1200 (La.App. 4th Cir.1986); *Carver v. Com.,* 634 S.W.2d 418 (Ky.1982); *People v. Woolridge,* 91 Ill.App.3d 298, 46 Ill.Dec. 761, 414 N.E.2d 814 (1980); *People v. McIntosh,* 70 Ill.App.3d 188, 388 N.E.2d 142 (1979); *Com. v.*

*Shepherd*, 269 Pa. Super. 291, 409 A.2d 894 (1979); *Bass v. State*, 375 So.2d 540 (Ala.Crim.App.1979); *State v. Murphy*, 59 Hawaii 1, 575 P.2d 448 (1978); *People v. Jones*, 75 Mich.App. 261, 254 N.W.2d 863 (1977); *State v. Akridge*, 23 Or.App. 633, 543 P.2d 1073 (1975). A minority of the courts have permitted the introduction of extrinsic evidence which has any rational tendency to establish a motive for the witness to falsify the testimony he has given, regardless of whether a foundation has been laid. *E.g., State v. Doughty*, 399 A.2d 1319 (Me.1979) and cases cited; *State v. Kehn*, 50 Ohio St.2d 11, 361 N.E.2d 1330, *cert. denied*, 434 U.S. 858, 98 S.Ct. 180, 54 L.Ed.2d 130 (1977); *Clayton v. Freehold Township Board of Education*, 67 N.J. 249, 337 A.2d 361 (1975) (by virtue of a New Jersey statute).

■ We are persuaded that the better reasoning is that expressed by the majority. As stated by the Court in *State v. Murphy, supra*, 575 P.2d at 459:

We believe that the correct rule is stated in *State v. Shaw*, 93 Ariz. 40, 378 P.2d 487 (1963) (en banc), which followed the majority position that before any bias of a witness can be introduced, a foundation must first be laid by cross-examining the witness regarding the facts which assertedly prove the bias. Two reasons were recognized by the court in *Shaw* for such a preliminary foundation. First, the foundational cross-examination gives the witness a fair opportunity to explain statements or equivocal facts which, standing alone, tend to show bias. Second, such cross-examination lends expediency to trials, for if the facts showing bias are admitted by the witness, the introduction of extrinsic evidence becomes unnecessary.

Clearly, it would have been proper to cross-examine Butts on any relevant facts tending to show bias or motive to falsify his testimony. *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Robinson v. State, supra; Deinhardt v. State*, 29 Md.App. 391, 348 A.2d 286 (1975), *cert. denied*, 277 Md. 736, 741 (1976); *State v. DeLawder*, 28 Md.App. 212, 344 A.2d 446 (1975). The witness would have been allowed to admit or deny the

alleged facts. If he admitted the facts, he could have explained how they did or did not affect his testimony or that the facts were irrelevant. *See Comm. v. Shepherd, supra; People v. Woolridge, supra.* If he denied the facts, then the trial judge could have allowed the extrinsic evidence to prove them.

Since appellant chose not to cross-examine the witness concerning the alleged impeaching evidence, it was not error for the trial judge to exclude the extrinsic evidence.

## II

■ While evidence of flight as showing consciousness of guilt has been criticized as being of slight probative value, it long has been held admissible by the appellate courts of Maryland. *Davis v. State,* 237 Md. 97, 205 A.2d 254 (1964), *cert. denied,* 382 U.S. 945, 86 S.Ct. 402, 15 L.Ed.2d 354 (1965); *Westcoat v. State,* 231 Md. 364, 190 A.2d 544 (1963); *Tasco v. State,* 223 Md. 503, 165 A.2d 456 (1960), *cert. denied,* 365 U.S. 885, 81 S.Ct. 1036, 6 L.Ed.2d 195 (1961); *Clay v. State,* 211 Md. 577, 128 A.2d 634 (1957); *Cothron v. State,* 138 Md. 101, 113 A. 620 (1921); *Pierce v. State,* 62 Md.App. 453, 490 A.2d 261 (1985); *Hines v. State,* 58 Md.App. 637, 473 A.2d 1335 (1984); *Sewell v. State,* 34 Md.App. 691, 368 A.2d 1111, *cert. denied,* 280 Md. 734 (1977). We have been referred to no Maryland cases, and our own research has disclosed none, applying this same rule to evidence of attempted suicide. Other jurisdictions, however, appear to have uniformly held that attempted suicide is analogous to flight as evidence of a consciousness of guilt and therefore admissible. *E.g., State v. Ackerman,* 380 N.W.2d 922 (Minn.App.1986); *Walker v. State,* 483 So.2d 791 (Fla.Dist.Ct.App.1986); *People v. Campbell,* 126 Ill.App.3d 1028, 82 Ill.Dec. 39, 467 N.E.2d 1112 (1984), *cert. denied,* 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 695 (1985); *McKinney v. State,* 466 A.2d 356 (Del.1983); *Commonwealth v. Goldenberg,* 315 Mass. 26, 51 N.E.2d 762 (1943); *People v. Duncan,* 261 Ill. 339, 103 N.E. 1043 (1913). The reasoning generally used in these cases has been summa-

rized in *Wharton's Criminal Evidence* § 159 (14th ed. 1985) as follows:

Evidence that the accused attempted to commit suicide is relevant as a circumstance tending in some degree to show consciousness of guilt. Some courts have stated that evidence of attempted suicide is analogous to evidence of flight, and hence the principle upon which evidence of flight is admitted, to show a consciousness of guilt, is applicable to evidence of attempted suicide.

Appellant argues that a person who kills himself does not avoid a more severe consequence by his conduct and so, an attempted suicide does not support the inference of a guilty state of mind, or make the likelihood of guilt any greater or less than would otherwise be the case. This argument was answered in *People v. Duncan, supra,* as follows:

The admission of the proof of the attempt of plaintiff in error to take his life while confined in the county jail is assigned for error. It has been universally held that the escape from custody or flight of one accused of crime may be proven upon the trial as a fact raising a presumption of guilt. It is insisted that an attempt at suicide is not analogous to flight or escape from custody, for the reason that in fleeing the accused is attempting to escape punishment entirely, whereas in attempting suicide he is endeavoring to inflict upon himself the highest punishment known to the law; and it is also pointed out as a matter of common knowledge that many people commit suicide who are charged with no offense and who do so for various and sometimes trivial reasons. While it may be true that one entirely innocent of the charge might under like circumstances attempt to flee, escape from custody, or take his life, it is not the action that would be expected of an innocent man, and such acts could in no sense be interpreted as indicating innocence. On the other hand, it is undoubtedly true that one guilty of the charge might prefer to avoid the humiliation and disgrace of a conviction and escape the punishment imposed by law by taking his life, just as he might seek to accomplish the

same result by flight or escape from custody. The fact that defendant attempted to commit suicide was a circumstance which was proper to be taken into consideration by the jury in connection with all the other facts and circumstances proven.

*Id.* 103 N.E. at 1049.

Appellant further asserts that even if evidence of attempted suicide may be admitted to show consciousness of guilt, that a sufficient foundation must be established to permit the inference that the flight or, in this case, the attempted suicide was in fact the result of consciousness of guilt, and the prejudicial impact of admission of this evidence must not outweigh its probative value.

■ The rule is that flight by an accused, "unless adequately explained, *may* be evidence of consciousness of guilt and can be considered in determining guilt." 62 Md.App. at 456, 490 A.2d at 264 (emphasis added). The jury may consider and weigh evidence of flight by the defendant with all of the other evidence in the case and give such weight, as in its judgment, it is fairly entitled to receive. *Id.* at 458, 490 A.2d 261. We need not establish a new requirement that the State must lay a foundation to establish that the attempted suicide was in fact the result of consciousness of guilt.

The trial judge must determine whether there were prejudicial factors which outweighed the probative value of the evidence sought to be offered.

In any case, the balancing of the intangibles—probative value against probable dangers—is essentially a discretionary matter to be determined by the trial judge and in the absence of an abuse of that discretion it will not be disturbed on review.

*Tipton v. State,* 39 Md.App. 578, 586, 387 A.2d 628, 633, *cert. denied,* 283 Md. 739 (1978).

■ Under the circumstances of this case, the trial court's decision to admit the attempted suicide into evidence was not an abuse of its discretion. The attempted suicide oc-

**612**

curred within five and one-half hours of the time that the appellant was charged with assaulting the victim. The jury could find that such conduct evidenced a consciousness of guilt.

JUDGMENTS AFFIRMED.

APPELLANT TO PAY COSTS.

ROBERT M. BELL, Judge, dissenting.

Evidence of the bias of a witness is always relevant. *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974); *Waldron v. State*, 62 Md.App. 686, 695–96, 491 A.2d 595 (1985); *Biggs v. State*, 56 Md.App. 638, 645–46, 468 A.2d 669 (1983), *cert. denied*, 299 Md. 425, 474 A.2d 218 (1984). Consequently, matters which tend to prove a witness' bias may be the subject of cross-examination or extrinsic evidence as to such matters may be admissible to impeach the witness. *Biggs*, 56 Md.App. at 646, 468 A.2d 669. Recognizing that this is so, but, analogizing bias evidence to evidence of a prior inconsistent statement and relying on McCormick on Evidence, § 40 (2nd ed. 1972) and a number of out-of-state cases, principally *State v. Murphy*, 59 Hawaii 1, 575 P.2d 448 (1978), the majority holds that the bias of a witness may not be shown unless that witness has first been cross-examined regarding the evidence proposed to be used to prove his or her bias. *See* op. p. 608. This "foundational cross-examination" is necessary, in the majority's view, because it "gives the witness a fair opportunity to explain statements or equivocal facts which, standing alone, tend to show bias ... [and it] lends expediency to trials, for if the facts showing bias are admitted by the witness, the introduction of extrinsic evidence becomes unnecessary." *State v. Murphy*, 575 P.2d at 459.

Although I am aware that proof of a prior inconsistent statement requires that a foundation be laid before the inconsistent statement may be proved and I have read and considered the cases, cited by the majority, which constitute the majority view, I would not condition the admission of

the evidence of bias in this case upon "foundational cross-examination." I incline toward the minority view. *See, e.g. State v. Kehn,* 50 Ohio St.2d 11, 361 N.E.2d 1330, 1335 (1977); *State v. Doughty,* 399 A.2d 1319, 1324 (Me.1979). This view is more consistent with the rationale for recognizing that bias evidence is always relevant: such evidence is an important and probative element in the search for truth and in ensuring that a defendant receives a fair trial. As such, it ought not be easily excluded on the basis of procedural niceties.

I disagree with the majority view and the majority opinion for other reasons. The analogy between proof of bias and proof of a prior inconsistent statement is far from true. Proof of a prior inconsistent statement does not necessarily, and I submit in most instances does not, prove that a witness is biased. Its chief value lies in showing an inconsistency between a witness' testimony on the witness stand and that witness' prior statements, which necessarily undermines the witness' veracity and/or memory. Furthermore, the inconsistent statement sought to be proved is the statement made by the witness. Therefore, it is logical to require that the *witness* be confronted with it in advance of permitting extrinsic evidence to prove it because if the witness admits it, proof by extrinsic evidence is no longer required.[1]

---

**1.** In the majority of the cases cited in support of "foundational cross-examination" as a predicate to the admission of extrinsic evidence to prove bias, the contested evidence consisted of statements or conduct of the witness as to whom the foundational cross-examination was required. *See e.g. Murphy,* 575 P.2d at 459 (witness' refusal to discuss the case with the defense); *State v. Shaw,* 93 Ariz. 40, 378 P.2d 487, 489 (1963) (the witness' confession); *People v. McIntosh,* 70 Ill.App.3d 188, 26 Ill.Dec. 518, 388 N.E.2d 142 (1979) (prior statements of the witness); *United States v. Harvey,* 547 F.2d 720, 722 (2nd Cir.1976) (same). *But see State v. Akridge,* 23 Or.App. 633, 543 P.2d 1073, 1075–76 (1975) in which the bias evidence consisted of repetition by a third party of a statement allegedly made by the District Attorney to the witness to be impeached. *People v. Woolridge,* 91 Ill.App.3d 298, 46 Ill.Dec. 761, 414 N.E.2d 814, 815 (1980) and *State v. Bell,* 488 So.2d 1200, 1202 (La.App.1986) do not support the majority's position. In the former, no link could be shown between the evidence

No such logic attaches to the evidence of bias sought to be introduced in this case. The evidence did not involve a prior statement or conduct by the witness whose testimony was sought to be impeached. Rather, the evidence was a statement made by the very witness called by appellant. And its probative value and relevance did not depend upon the witness to be impeached. The statement tended, inherently, to prove bias. I reject the notion that either of the rationales offered by the majority as justification for the foundational requirement is sufficient to warrant its exclusion. Neither fairness to the witness nor expediency justifies precluding appellant from presenting highly relevant evidence, necessary to assure him a fair trial. This is particularly the case since its admission would have worked no injustice on the State, which would have sought and, undoubtedly would have been granted, the right to recall the victim for the purpose of addressing the evidence. An extra step would of course be required; however, that is preferable to the denial of a fair trial.[2]

The result in this case is particularly egregious. Accepting for the moment that a foundational requirement is justified, appellant was entitled to call the victim as his witness for the purpose of laying the proper foundation. The court rendered that option unavailable. Assuming that

---

proposed to be presented and the witness as to whom the bias was alleged. In the latter, the foundational requirement was imposed by statute.

**2.** Judge Orth, speaking for the Court of Appeals in *Trusty v. State*, 308 Md. 658, 673, 521 A.2d 749, 756 (1987), reiterated what has always been the keystone of our justice system: "A fair trial is the alpha and the omega of our administration of criminal justice." When we exclude highly relevant evidence on the grounds of expediency and supposed fairness to a defendant's accuser, we make the fair trial requirement subordinate to these purposes. To do so is to "seriously undermine what our forefathers achieved after a long and bloody conflict to gain their independence and attempted to protect by the adoption and ratification of a constitution the declared purposes of which included to "establish Justice ... and secure the Blessings of Liberty to ourselves and our Posterity...." *Id.*, 308 Md. at 673–674, 521 A.2d at 757.

the majority's reasoning, that the State's objection to the bias evidence as being "prejudicial" was not a specification of a particular basis for the objection, is correct, the trial judge sustained the objection on the basis of relevance and because he thought the proffered evidence, "confusing". Because the ruling rested, at least in part, on relevance, it would have been futile for appellant to seek to lay a foundation and then to introduce the excluded evidence; appellant was afforded no opportunity to lay the foundation required by the majority. For this additional reason, I would reverse and remand for a new trial.

The majority also holds that the trial judge did not abuse his discretion when he admitted evidence of appellant's attempted suicide. It does so by analogizing attempted suicide to flight by an accused. Once again, the majority relies upon out-of-jurisdiction cases to support its holding.

As the majority recognizes, evidence of flight as showing a consciousness of guilt has been criticized as being of slight probative value. *See Wong Sun v. United States,* 371 U.S. 471, 483 n. 10, 83 S.Ct. 407, 415 n. 10, 9 L.Ed.2d 441 (1963); *Vick v. United States,* 216 F.2d 228, 232 (5th Cir.1954). Nevertheless, it extends the rule permitting the use of such evidence to include an attempted suicide. In so doing, it refuses appellant's very reasonable request to require the State to lay a foundation to establish a connection between the attempted suicide and appellant's guilt of the charged offense. In my view, where the probative value of evidence is slight and its prejudice great, we should be loathe to extend, even by analogy, the rule permitting evidence of such limited value to include situations not clearly encompassed by it. In my view, neither logic nor fairness ever justifies the use of evidence of attempted suicide to prove an accused's consciousness of guilt of the crime on trial. In this case there is the added factor that the attempted suicide occurred when appellant was in administrative segregation. That factor buttresses my contention that the tendency of the evidence of attempted

suicide to prove a consciousness of guilt is at best speculative. It should not have been allowed.