Argued and submitted October 5, 1981, Court of Appeals reversed,
trial court affirmed February 3, 1982

STATE OF OREGON,
*Petitioner on Review,*
*v.*
FRANK WESLEY CARSON,
*Respondent on Review.*

(CA 17606, SC 27943)

640 P2d 586

James E. Mountain, Deputy Solicitor General, Salem, argued the cause for petitioner. With him on the brief was Dave Frohnmayer, Attorney General, and William F. Gary, Solictor General, Salem.

James L. Susee, Salem, argued the cause for respondent. With him on the brief was Allen, Stortz, Barlow, Fox & Susee, Salem.

CAMPBELL, J.

Tanzer, J., specially concurred and filed an opinion in which Denecke, C.J., and Peterson, J., joined.

Lent, J., dissented and filed an opinion.

## CAMPBELL, J.

Defendant was convicted of attempted manslaughter in the first degree under an indictment for attempted murder.[1] The issue for decision is whether the evidence of extreme emotional disturbance was sufficient to justify giving the state's requested jury instruction on attempted manslaughter in an attempted murder prosecution. Defendant appealed to the Court of Appeals alleging the following assignments of error: The circuit court erred in giving instructions that were both contradictory and confusing; the instructions on Attempted Manslaughter were error in that the concept of extreme emotional disturbance applies only to consummated intentional homicides and in that there was insufficient evidence to establish the existence of extreme emotional disturbance. The Court of Appeals reversed and remanded for a new trial on the ground that there was no evidence of extreme emotional disturbance, therefore the jury instruction on attempted manslaughter was improper. 52 Or App 55, 627 P2d 514 (1981). Because of its result, the Court of Appeals did not reach defendant's other assignments. We allowed the state's petition for review.

---

[1] Murder was defined by former ORS 163.115:

"(1) Except as provided in ORS 163.118 and 163.125, criminal homicide constitutes murder when:

"(a) It is committed intentionally by a person who is not under the influence of an extreme emotional disturbance;

"(2) For the purpose of paragraph (a) of subsection (1) of this section, a homicide which would otherwise be murder is committed under the influence of extreme emotional disturbance when such disturbance is not the result of the person's own intentional, knowing, reckless or criminally negligent act, and for which disturbance there is a reasonable explanation. The reasonableness of the explanation for the disturbance shall be determined from the standpoint of an ordinary person in the actor's situation under the circumstances as the actor reasonably believes them to be. * * *."

The 1981 Oregon Legislature amended ORS 163.115 to read:

"(1) Except as provided in ORS 163.118 and 163.125, criminal homicide constitutes murder when:

"(a) It is committed intentionally except that it is an affirmative defense that, at the time of the homicide, the defendant was under the influence of extreme emotional disturbance; * * *."

Oregon Laws 1981 ch 873 § 5.

Defendant lived in a trailer home beside a motel near Gates, Oregon. An Oregon State Policeman named Richard Tenderella moved into the motel to operate undercover. His task was to investigate recent burglaries in the area, specifically the theft of a .44 magnum handgun from the motel, and, to that end, to befriend defendant and his brother.

On August 23, 1979, defendant sat outside his trailer. With him were defendant's brother, his brother's wife, their two children, aged one and two, and defendant's girlfriend. Tenderella walked by with a .38 handgun and a sixpack of beer. Defendant asked for and received a beer from Tenderella. Tenderella went into the woods and fired the .38 handgun until told to stop by the motel manager. Tenderella put the .38 handgun in his car, visited with the group outside defendant's trailer until the beer had been consumed, and then volunteered to go to town for more beer. He returned with a case of beer, which the party completely consumed. Various topics were discussed by defendant and Tenderella, among them was the subject of a gun trade for Tenderella's .38 handgun. Tenderella was hoping that defendant would mention the possibility of a trade for the stolen .44 magnum handgun. During the course of the conversation, Tenderella got the .38 out of the trunk of his car, simultaneously concealing a .45 handgun

---

Manslaughter in the first degree is defined by ORS 163.118(1)(b):

"(1) Criminal homicide constitutes manslaughter in the first degree when:

"(b) It is committed intentionally under circumstances not constituting murder.

"* * * * *"

Assault in the first degree is defined by ORS 163.185:

"(1) A person commits the crime of assault in the first degree if he intentionally causes serious physical injury to another by means of a deadly or dangerous weapon. * * *."

Attempt is defined by ORS 161.405:

"(1) A person is guilty of an attempt to commit a crime when he intentionally engages in conduct which constitutes a substantial step toward commission of the crime.

"* * * * *"

in the small of his back under his shirt. He gave the .38 to defendant and defendant fired two shots in the air. Defendant's testimony showed that Tenderella was behaving in a drunken manner by this point in the interaction. At one point Tenderella fell off the bench he was sitting on. There was testimony to the effect that Tenderella's speech was slurred and that he was "slobbering." Tenderella said that the .38 was a "hot gun," meaning stolen, but that the owner was dead and that defendant should not be concerned about possible tracing of the gun. He also mentioned that there were warrants out for his arrest in Portland. At one point Tenderella picked up a knife from the table and threw it into a nearby tree. Defendant testified that he was sufficiently alarmed by Tenderella's behavior that, when Tenderella went out behind the trailer to relieve himself, defendant took the .38 into his trailer and concealed it in a drawer. After a while, Tenderella noticed the absence of the .38 and requested its return. Defendant told Tenderella that the gun was in a safe place. Tenderella became belligerent and demanded the return of the .38 several times. Finally, Tenderella jumped up, called defendant an obscene name and pulled out the concealed .45 handgun. He began waving it wildly in the air, pointing it at defendant. Defendant retreated into the trailer. Defendant's girlfriend rushed up to Tenderella and attempted to get him to put the .45 away. Tenderella hit her, pushed her away, and pointed the gun at her, all the while addressing obscenities to her. She was screaming "He's got a gun, Frank." Tenderella also pointed the gun at defendant's brother, cautioning him not to move or "I'll blow you away." Defendant saw and heard all this from his position inside the trailer. Tenderella fired the first shot, wildly demanding the return of his .38. Defendant threw the .38 out the trailer door, loaded his shotgun with buckshot and shot into the ground to frighten Tenderella into leaving. Tenderella returned fire at defendant whereupon defendant fired into the truck in front of Tenderella, about 15 feet from the trailer. More shots were fired, none of which hit anyone.

Defendant's family and girlfriend testified at length to their fright during the exchange of gunfire and as a result of Tenderella's conduct, particularly for the small children in the immediate area of the firing. We focus on

circumstantial evidence to decide this case since there was no direct evidence of extreme emotional disturbance at the time of the shooting.[2]

According to defendant's evidence, Tenderella did not identify himself as a police officer at any point in the confrontation. Defendant learned that Tenderella was a police officer only after his girlfriend went to the motel office to call the police about the "maniac" creating a disturbance in the area. At that point she was restrained by Tenderella, who told her he was a police officer. She then shouted to defendant that Tenderella was an officer. Defendant, his brother and his girlfriend were arrested for attempted murder. The latter two charges were later dropped. Defendant was also charged with being an exconvict in possession of a firearm.[3]

At trial, the jury was instructed on attempted murder, former ORS 163.115, and also on attempted manslaughter based on extreme emotional disturbance, ORS 163.118(1)(b), and attempted assault, ORS 163.185. Defendant objected to the instructions on attempted

---

[2] The state claimed that there was some direct evidence of extreme emotional disturbance in this case, but we disagree. Defendant's testimony on direct examination that he was "scared," "amazed" and "taken aback" referred to a time after the shooting was over:

"Q: When did you first remember seeing Sharon Taylor (defendant's girlfriend) after the shooting stopped?

"A: She told me that he had left and I seen her out the doorway of the trailer.

"Q: What did you do then?

"A: I asked Sharon if she would go over to the manager's office and call the police because I didn't know what was wrong with the dude.

"Q: Were you scared?

"A: Yes.

"Q: Were you amazed, were you taken aback?

"A: Oh yeah." (Parenthetical added).

Analysis of this case has been made more difficult because although the state requested the instruction on attempted manslaughter in the first degree based on the presence of extreme emotional disturbance, neither party tried to prove the presence of extreme emotional disturbance. Defendant tried to prove his innocence of all offenses. The state tried to prove defendant's guilt of the offense of attempted murder. There was, therefore, a studied attempt on the part of both parties to avoid any introduction of evidence of extreme emotional disturbance.

[3] Defendant's conviction for the offense of ex-convict in possession of a firearm is not in issue here.

murder and attempted manslaughter.[4] On defendant's appeal from his conviction for attempted manslaughter in the first degree the Court of Appeals reversed, finding insufficient evidence of extreme emotional disturbance to justify the attempted manslaughter instruction. We reverse the Court of Appeals decision, effectively reinstating defendant's conviction for attempted manslaughter.

As originally enacted in the Oregon Criminal Code of 1971, the statutes describing murder and manslaughter provided:

ORS 163.115:

"(1) Except as provided in ORS 163.125, criminal homicide constitutes murder when:

"(a) It is committed intentionally;"

ORS 163.125:

"(1) Criminal homicide constitutes manslaughter when:

\* \* \*

"(b) A homicide which would otherwise be murder is committed under the influence of extreme emotional disturbance, which disturbance is not the result of his own intentional, knowing, reckless or criminally negligent act, and for which disturbance there is a reasonable explanation;"

---

[4] Defendant's objections to the jury instructions as they relate to the central issue in this case are as follows:

"I also object to the summary of the charge of Attempted Murder which was given which starts out as to the charge of Attempted Murder you are to consider this summary in light of all the previous instructions given and then you give the first four elements and I object to the fifth element which states, 'While not under the influence of an extreme emotional disturbance'. I give the same reasons for this exception as I did the other Attempted Murder instruction and that is this is a defense that should be raised by the Defendant. There was no evidence presented on this and it should not be an instruction.

"I take exception to the instruction on Attempted Manslaughter. First of all, I'm not sure there is such a crime. I object to the fourth element you gave which said 'Unlawfully and intentionally attempting to cause the death of another human being'. I believe that 'recklessly' should be added between intentionally and attempted. I believe that after the words, 'by shooting him with a shotgun' should be added, 'under the circumstances, manifesting an extreme indifference to the value of human life'. I take exception to it because first of all, I don't believe there is such a thing as Attempted Manslaughter. I also object to the fifth element which you gave which has to do with under the influence of extreme emotional disturbance in its entirety. I object to this element because here again it is a defense raised by the Defendant and there was no evidence of extreme emotional disturbance."

■     The Oregon Criminal Code sections treating criminal homicide are versions of the Model Penal Code § 210.1-.3. The comments to the Model Penal Code sections clearly illustrate the distinctions between the common law doctrine of heat of passion and the doctrine of extreme emotional disturbance. Model Penal Code and Commentary § 210.3, Commentary at 49 (1980). A major departure from prior common law was intended by the adoption of the doctrine of extreme emotional disturbance, specifically by the change in language from requiring a "heat of passion" upon "adequate provocation" to "under the influence of extreme emotional disturbance" for which there is a "reasonable explanation or excuse."[5] The explanation of reasonableness injected a subjective element into the jury's determination. Such reasonableness is to be determined from the viewpoint of a person in the actor's situation under the circumstances as the actor believes them to be. After the Model Penal Code went into effect, more cases could be found to be manslaughter, since the jury could now view the actor's "situation" and the circumstances "as the actor believed them to be." The drafters of the Oregon Criminal Code adopted this view, and discussed some of the circumstances which could give rise to a jury finding of extreme emotional disturbance. The Oregon Code drafters pointed out that more than the classic provocation case, i.e., adultery or the infliction of serious injury, would be covered by the extreme emotional disturbance doctrine. The addition of a subjective element allows application of the doctrine where the provocative circumstance is one calculated to arouse extreme emotional disturbance in the particular defendant. Words alone can now be sufficient to invoke the doctrine, although they were not at common law. *See* Proposed Oregon Criminal Code § 89 at 89 (1970).

---

[5] Under the former version of ORS 163.118(1)(b), the killing of another intentionally without malice and deliberation "upon a sudden heat of passion caused by a provocation apparently sufficient to make the passion irresistible" constituted voluntary manslaughter. ORS 163.040(1). In *State v. Jones*, 241 Or 142, 405 P2d 514 (1965), this court discussed the criteria for applying the doctrine of heat of passion. In that case, Jones and the victim were sitting at a lunch counter. An argument arose regarding some minor matter, and the victim hit Jones several times with his fist. Defendant stabbed the victim three times. Jones was convicted of second degree murder, and Jones appealed on the ground that there was no evidence of malice and therefore as a matter of law he could only be convicted of manslaughter. The court elaborated the requirements of the heat of

"Extreme emotional disturbance" has been defined as: ". . . the emotional state of an individual who: (a) has no mental disease or defect (that rises to the level established by statute defining lack of criminal responsibility); (b) is exposed 'to an extremely unusual and overwhelming stress; and (c) has an extreme emotional reaction to it, as a result of which there is a loss of self-control and reason is overborne by intense feelings, such as passion, anger, distress, grief, excessive agitation or other similar emotions. . ." *People v. Ford*, 423 NYS 2d 402, 404, 102 Misc. 2d 160 (1979). (Parentheticals added.)

■ Viewing defendant's situation at the time of the shooting, it is not difficult to put oneself in defendant's shoes and empathize with his protective instincts regarding his brother's wife and babies, as well as his girlfriend. Although it cannot definitively be said that Tenderella was the "aggressor" in the shooting, it also cannot be said that defendant instigated it. In a situation such as this, where both parties are engaged in combat, and where close relatives are in the immediate vicinity of the shooting, we cannot say as a matter of law that the circumstances render the application of the doctrine of extreme emotional disturbance improper either in the view of the Oregon Criminal Code drafters or under the definition quoted, supra, assuming there is sufficient evidence in the record to justify submission of the issue to the jury.

In 1975, the legislature amended the sections on criminal homicide as follows in pertinent part:

"ORS 163.115(1) Except as provided in ORS 163.118 and 163.125, criminal homicide constitutes murder when: (a) It is committed intentionally by a person who is not under the influence of an extreme emotional disturbance; * * *.

___

passion doctrine as follows: the jury must weigh the variables of degree of provocation and the measures employed by the defendant in response to it to determine whether the passion was irresistible. An assault may or may not be sufficient provocation to invoke the doctrine. Some of the factors cited by the court for jury consideration are the size of the assailant, the manner in which he approached the defendant, the language used, the instrument employed by the defendant, defendant's language and his size in relation to that of his assailant. The defendant's conduct must be measured against the standards of the community by the jury. Thus, the test for heat of passion was an objective one to be made by the jury unless the court could find as a matter of law that the passion was or was not irresistible. The court found that the evidence raised a jury question as to heat of passion, but that the jury found against the defendant on that question and therefore affirmed the conviction.

"(2) For the purpose of paragraph (a) of subsection (1) of this section, a homicide which would otherwise be murder is committed under the influence of extreme emotional disturbance when such disturbance is not the result of the person's own intentional, knowing, reckless or criminally negligent act, and for which disturbance there is a reasonable explanation. The reasonableness of the explanation for the disturbance shall be determined from the standpoint of an ordinary person in the actor's situation under the circumstances as the actor reasonably believes them to be. * * *.

"ORS 163.118(1) Criminal homicide constitutes manslaughter in the first degree when:
"* * *

"(b) It is committed intentionally under circumstances not constituting murder."

■　　　The significance of the 1975 amendments lies in their exposition of legislative intent as to the quality of extreme emotional disturbance. By amending ORS 163.115(1) to require the absence of extreme emotional disturbance, the legislature expressed its view that the absence of extreme emotional disturbance is an integral component of the offense of murder, to be proved beyond a reasonable doubt once raised.

■　　　Where the state must rely on circumstantial evidence to prove an essential fact for conviction, the test is "whether a reasonable person, based upon all the evidence adduced in the case, would be warranted in finding beyond a reasonable doubt that the defendant committed the offense charged." *State v. Zauner*, 250 Or 105, 110, 441 P2d 85 (1968). The evidence of extreme emotional disturbance in this case is circumstantial. We find that this test applies to the absence of extreme emotional disturbance, which must be found beyond a reasonable doubt once raised.

■　　　The state requested the instruction on attempted manslaughter in the first degree. There was substantial circumstantial evidence, most of which was controverted, which supported the jury's finding of extreme emotional disturbance. Tenderella was the instigator of the shooting. Tenderella assaulted defendant's girlfriend. Defendant's relatives and girlfriend testified to extreme fright as a

result of Tenderella's erratic behavior, and to concern for the infants in the immediate area of the shooting. We find as a matter of law that the jury would be warranted in not finding the absence of extreme emotional disturbance to have been proved beyond a reasonable doubt as is required for an attempted murder conviction. Therefore, the instruction on attempted manslaughter in the first degree was proper. *See State v. Krause,* 251 Or 318, 445 P2d 500 (1968); *State v. Rawls,* 247 Or 328, 429 P2d 574 (1967); *State v. Nodine,* 198 Or 679, 259 P2d 1056 (1953); *State v. Wilson,* 182 Or 681, 189 P2d 403 (1948). *See also State v. Flygare,* 18 Or App 292, 525 P2d 181, *rev den* (1974).

The dissent criticizes us for failing to endorse the trial court's instruction of the definition of "extreme" as applied to emotional distress. The trial court adapted an instruction from *State v. Akridge,* 23 Or App 633, 543 P2d 1073 *rev den* (1975). The defendant did not assign the giving of the instruction as error and therefore there was no need for this court to discuss it. The dissent comments that "the evidence discussed by the majority indicates that the defendant kept his head when all about him were losing theirs and did not lose his self-control." To reach this conclusion the dissent was required to assume the role of a factfinder. The jury could have just as easily drawn the opposite inference from the circumstantial evidence and found that the defendant's reason was overborne resulting in his loss of self-control.

The Court of Appeals opinion, 52 Or App 55, 627 P2d 514 (1981), seems to hold that there is not enough direct evidence in this case to prove extreme emotional disturbance. It ignores the circumstantial evidence. The dissent refers only to direct evidence as to the defendant's emotional state. It confines that evidence to testimony of witnesses that the defendant was "scared, amazed, taken aback, startled, shocked and/or stunned and (was) aware that his dear ones (were) very frightened." The jury cannot look inside the defendant's head and is entitled to consider the chain of circumstances that include but are not limited to: (1) Tenderella jumping up, calling the defendant an obscene name and pulling out a concealed handgun, (2) Tenderella hitting the defendant's girlfriend, pointing a

gun at her, and calling her obscene names, and (3) Tenderella pointing a gun at defendant's brother and telling him not to move or "I'll blow you away." It is the jury's duty to determine whether or not the defendant was suffering from extreme emotional disturbance from all the evidence in the case under proper instructions from the trial court. This is a stronger fact pattern than that which this court approved under the "heat of passion" doctrine in *State v. Jones*, 241 Or 142, 405 P2d 514 (1965) (see footnote 5).

Because of the result we reach in this case, we must proceed to consider defendant's other assignments of error before the Court of Appeals. Defendant's assignment that the circuit court erred in giving jury instructions which were both contradictory and confusing, in that the verdict forms given the jury were only guilty of attempted murder, guilty of attempted manslaughter, guilty of attempted assault and not guilty of attempted murder is without merit.

The defendant was indicted by separate indictments charging him with the crimes of Attempted Murder and Ex-Convict in Possession of a Firearm. The charges were consolidated for trial. The trial court instructed the jury as to the verdict forms on the charge of Attempted Murder as follows:

"On the other charge, Attempted Murder there are four verdict forms and you'll bring back one of them also. Reading from one, We the jury in the above-entitled criminal action find the Defendant not guilty of Attempted Murder. Another reads, We the jury in the above-entitled criminal action find the Defendant guilty of Attempted Murder. Another reads, We the jury in the above-entitled criminal action find the Defendant guilty of Attempted Manslaughter in the First Degree and finally, We the jury in the above-entitled criminal action find the Defendant guilty of Attempted Assault in the First Degree, dated 21st day of December.

"Please keep in mind on this charge of Attempted Murder you will bring back only one of these verdict forms; in other words, if you find the Defendant not guilty of either Attempted Murder or Attempted Manslaughter I or Attempted Assault I then you will bring back the verdict form which reads the Defendant is not guilty of Attempted Murder. In other words, you cannot find him not guilty of

Attempted Murder and then find him guilty of one of the lesser included offenses but if you just keep in mind for each charge you will bring back only one appropriate verdict form. I don't think you'll have any difficulty in following these instructions."

The defendant argued in his brief in the Court of Appeals that the above instructions were confusing:

"* * * The jury was told to bring back only one appropriate verdict form for each charge. If the jury found the defendant guilty of Attempted Murder, then they were to sign the guilty form. The appropriate verdict form for Attempted Murder would appear to be the form headed Not guilty of Attempted Murder. However, the jury could not sign that form because they were told to sign the form only if the defendant is not guilty of Murder, not guilty of Manslaughter and not guilty of Assault. It is confusing to be told to sign the guilty form if guilty, but do not sign the not guilty form if not guilty, but do sign the guilty form if guilty of all three charges." (Transcript references omitted).

In the trial court the defendant excepted to the instructions on the verdict forms for a different reason:

"I object also to the instruction about the verdict form which was given to the jury. I object to the instruction that says, 'you are instructed if you do find from the evidence and beyond a reasonable doubt that the Defendant committed the crime of Attempted Murder or less degree of the crime of Manslaughter in the First Degree or Attempted Assault as I have defined these degrees for you then the Defendant is not guilty and you should return a verdict of not guilty on each of these charges'. However, the jury wasn't given a not guilty form.

"THE COURT: I think you'll find at that point I explained the verdict form was self-explanatory.

"MR MILLS: However, I believe the jury should have been given a verdict form that said not guilty for the crime of Attempted Manslaughter and a verdict form that said not guilty for the crime of Attempted Assault in the First Degree. Although his Honor did explain how it is, for them to return a verdict of not guilty on all charges I believe the fact they only have a guilty verdict form for two of the charges is prejudicial and they should have been given a not guilty verdict form for each of those also."

This case was tried in December, 1979, and at that time former ORS 17.510 provided in part:

"No * * * instruction given to a jury in the circuit court shall be subject to review upon appeal unless its error, if any, was pointed out to the judge who gave it and unless a notation of an exception was made in the circuit court. * * *"

■ The purpose of former ORS 17.510 was to point out any error that may have occurred in the instructions so that the trial court could be given an opportunity to correct it. *Brigham v. Southern Pacific Co.*, 237 Or 120, 390 P2d 669 (1964). Here the defendant did not point out to the trial court the alleged error that he complained of in his assignment of error in the Court of Appeals. Given the opportunity the trial court could have reworded the instruction to meet the defendant's objection set out in his assignment of error.

The dissent suggests that a simple "not guilty" verdict from should have been submitted to the jury under ORS 136.455:

"A general verdict upon a plea of not guilty is either 'guilty,' of an offense charged in the accusatory instrument, or 'not guilty.' "

We disagree and are of the opinion that the trial court gave the jury the correct verdict forms as required by ORS 136.460:

"Upon a charge for a crime consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the accusatory instrument and guilty of any degree inferior thereto or of an attempt to commit the crime or any such inferior degree thereof."

■ Defendant also assigned as error the court's instruction on attempted manslaughter based on extreme emotional disturbance. Defendant claimed that extreme emotional disturbance applies only to consummated homicides. This contention is apparently grounded on the principle that one cannot attempt to commit a reckless act. Since the form of manslaughter in this case does not involve recklessness, we find no merit in defendant's contention.

Reversed.

**TANZER, J.**, specially concurring.

# I

Like Justice Lent, I cannot join the conclusion in Justice Campbell's lead opinion that there was sufficient evidence that defendant acted under the influence of extreme emotional disturbance. There is evidence that defendant acted in defense of self and others. He requested and received an instruction submitting that defense. There is no evidence, however, that defendant suffered an "emotional disturbance" or, if so, that it was "extreme" or that defendant acted under the influence of that condition. If the defendant's testimony is believed, defendant was perhaps the only cool-headed, deliberate person on the scene.

The lead opinion discussion of law does not support its conclusion that there was evidence of extreme emotional disturbance. It is true that "extreme emotional disturbance" was intended as a broader concept than "heat of passion" in the sense that it was intended to refer to a range of situations broader than discovered adultery. There is no suggestion in the statutory phrase or in its history, however, that it was intended to refer to emotional states of lesser intensity than heat of passion. Surely there was no suggestion that the phrase "extreme emotional disturbance" was to refer to emotional states of the intensity of having been "taken aback" or fear for safety. The lead opinion cites not a single case analogous to this fact situation from any of the many jurisdictions which have enacted the concept of extreme emotional disturbance propounded in the Model Penal Code. The lead opinion offers only an explanation of "extreme emotional disturbance" by a New York court which contradicts its holding and supports the conclusions of Justice Lent and myself:

> " '* * * [T]he emotional state of an individual who: (a) has no mental disease or defect [which establishes nonresponsibility]; (b) is exposed to an extremely unusual and overwhelming stress; and (c) has an *extreme emotional reaction* to it, *as a result of which there is a loss of self-control* and *reason is overborne by intense feelings, such as passion, anger, distress, grief, excessive agitation or other similar emotions.' " People v. Ford*, 423 NYS2d 402, 404, 102 Misc 2d 160 (1979). (Emphasis added.)

There is no evidence in this case of "an extreme emotional reaction." There is none of a resulting "loss of self-control."

Nor is there evidence that defendant's "reason [was] overborne." To the contrary, defendant's evidence is that he was acting deliberately and reasonably in defense of self and others. The holding of the lead opinion is inconsistent with the statutory meaning and I am aware of no support for it anywhere.

I conclude that it was error to have given an instruction on extreme emotional disturbance because there was no evidence from which that fact could be found. In this I agree with Part I of Justice Lent's dissenting opinion.

## II

Although submission of the issue of extreme emotional disturbance to the jury was error, I conclude that it was harmless error. Indeed, it was probably an error favorable to the defendant. In order to understand that conclusion, it is necessary to understand the strange statutory history of the concept of extreme emotional disturbance, part of which is set out in the lead opinion.

Prior to the 1971 comprehensive revision of the criminal code, murder was prohibited in the traditional two degrees: Second degree murder was homicide done

"* * * purposely and maliciously but without deliberation and premeditation * * *." ORS 163.020 (1969).

First degree murder was homicide done

"* * * purposely, and of deliberate and premeditated malice * * *." ORS 163.010 (1969).

One form of manslaughter was homicide committed by

"Any person who, without malice express or implied, and upon a sudden heat of passion caused by a provocation apparently sufficient to make the passion irresistible, voluntarily kills another * * *." ORS 163.040(1) (1969).

Thus, under the pre-revision code, proof of "heat of passion" was essentially a means of negating malice or deliberation in the course of a purposeful (i.e., intentional) homicide. See, State v. McCoy, 17 Or App 155, 173 n 2, 521 P2d 1074 (concurring opinion of Tanzer, J.), aff'd on other grounds 270 Or 340, 527 P2d 725 (1974).

For reasons we discussed more fully in State v. Quinn, 290 Or 383, 402-03, 623 P2d 630 (1981), in 1971 the legislature revised the code to provide but one degree of

murder, intentional homicide. ORS 163.115 (1971). "Heat of passion" was abandoned because it had no independent significance if malice and deliberation were no longer elements of murder. Nevertheless, a compassionate intention to recognize intentional homicide committed under certain extenuating circumstances as a lesser crime resulted in one form of manslaughter being defined as:

"* * * a homicide which would otherwise be murder * * * committed under extreme emotional disturbance." ORS 163.125 (1971).

In the new statutory scheme, extreme emotional disturbance was not a condition which negated elements of murder, as heat of passion negated malice and deliberation under the older scheme. It was an additional mitigating fact, rather than a contradictory fact, to be proved by one who did not wish to be convicted of murder despite evidence of intentional homicide from which murder could be found.

In 1975, the legislature lifted the concept of extreme emotional disturbance from the manslaughter statute and added it to the murder statute. ORS 163.115(1)(a) now defines one form of murder as criminal homicide

"* * * committed intentionally by a person who is not under the influence of extreme emotional disturbance."

Manslaughter is now in two degrees. One form of first degree manslaughter is now defined by ORS 163.118(1)(b) as criminal homicide

"* * * committed intentionally under circumstances not constituting murder."

What the legislature intended to accomplish by this amendment is unclear and the legislative history of the change is not helpful. The impetus for change was apparently the Court of Appeals decision in *State v. McCoy, supra,* in which three judges wrote three opinions on the burden of proof of extreme emotional disturbance. In *State v. Keys,* 25 Or App 15, 548 P2d 205, *rev den* (1976), the Court of Appeals traced the inconclusive legislative history of the amendments,[1] concluded that extreme emotional

---

[1] *State v. Keys,* 25 Or App 15, 18-19, 548 P2d 205, *rev den* (1976):

"In *State v. McCoy, supra,* we attempted to settle most of the interpretation problems, but may not have been successful because each of the members

disturbance was *sui generis,* and assigned responsibility to the state in a murder prosecution to disprove extreme emotional disturbance only if there is first some affirmative evidence of that fact from either the state or the defendant. My review of the legislative history confirms that set out by the Court of Appeals. Moreover, I conclude that its analysis and assignment of the burden of proof under the 1975 amendments is the most sensible, consistent with what we can discern of legislative intent.[2] If there is any evidence from which it can reasonably be inferred that a defendant intentionally killed under the influence of extreme emotional disturbance, the state has the burden of proving the absence of that fact.

The instructions to the jury were as ambiguous as the statute. The jury was instructed that the state had the

of the *McCoy* panel wrote a separate opinion. Nevertheless, it is clear that the majority in *McCoy* at least agreed that the burden of proof on the extreme-emotional-disturbance issue is on the state once it has been injected into a murder prosecution by competent evidence.

"*McCoy* was mentioned frequently during the legislative deliberations on HB 2540, which became Oregon Laws 1975, ch 577, p 1305. These 1975 amendments to the homicide statutes had several apparent purposes. One was to create an additional degree of criminal homicide, apparently to facilitate plea bargaining; thus, the present scheme is murder (life imprisonment), first-degree manslaughter (20-year imprisonment), and second-degree manslaughter (10-year imprisonment). Another change proposed to the legislature was that extreme emotional disturbance be labeled an affirmative defense; the proponents of this change made it clear they were seeking a legislative overruling of *McCoy.* It is equally clear, however, that the legislature, in rejecting this proposed change, was familiar with *McCoy* and did not intend that Oregon Laws 1975, ch 577, be any change in the basic *McCoy* rule that the burden of proof on the extreme-emotional-disturbance issue is on the state, once it has been properly raised in a murder prosecution.

"* * * * *

"We deduce from the legislative history that the new first-degree manslaughter offense ('intentionally under circumstances not constituting murder') means intentionally under extreme emotional disturbance. Thus the sole distinction between murder, ORS 163.115(1)(a), and first-degree manslaughter, ORS 163.118(1)(b), is the presence or absence of extreme emotional disturbance." (Footnote omitted.)

[2] By contrast, Justice Lent's construction of the 1975 amendments leads him inexorably to the absurd conclusion that in a trial for murder and manslaughter:

"* * * If the evidence had been in equipoise or merely preponderated one way or the other, the state was not entitled to a conviction on either charge." 292 Or at 480.

Whatever the legislature may have intended, it was surely not that.

burden of proving every element, that murder was intentional homicide not committed under the influence of extreme emotional disturbance and that manslaughter was intentional homicide committed under the influence of extreme emotional disturbance. By finding defendant guilty of attempted manslaughter, the jury necessarily found that defendant has attempted to commit intentional homicide.

If extreme emotional disturbance is not in issue because there was no evidence of it to trigger the state's burden to disprove it, then the result of the jury's finding that defendant attempted to commit intentional homicide should have been a verdict of guilty of attempted murder. The only effect of the erroneous injection of the issue of extreme emotional disturbance was to enable the jury to find defendant guilty of a less severe crime than that for which they had found all the elements to have been proved beyond reasonable doubt. Thus the error was to defendant's benefit, not to his prejudice.

If, as Justice Lent suggests, the absence of extreme emotional disturbance is now an element of attempted murder and the state has the burden of proving it, then the instruction on murder was correct and the instruction on manslaughter was erroneous, but the error was also harmless. A trial judge is obliged to submit lesser included offenses, the elements of which may be inferred from the evidence, even over objection. *State v. Washington,* 273 Or 829, 543 P2d 1058 (1975). If the absence of extreme emotional disturbance is an element of murder and if the jury found that the state had failed to prove that element, but had proved the other elements, *i.e.,* attempted intentional homicide, then they would necessarily have found, in the words of ORS 163.118(1)(b), "criminal homicide * * * committed intentionally under circumstances not constituting murder." The jury was instructed that to find defendant guilty of the lesser charge they must affirmatively find extreme emotional disturbance, whereas it would have been sufficient to merely determine that the state had not proved the absence of extreme emotional disturbance. The error would have been significant if the jury had found defendant guilty of the greater charge because the erroneous instruction increased the proof necessary for the lesser

charge. Where, as here, however, the jury nevertheless found defendant guilty of the lesser charge, the error made no difference in the verdict, *i.e.,* it was harmless. Therefore, even if the state had an initial burden to prove the absence of extreme emotional disturbance, this instruction was harmless error.

## III

On the assignment of error regarding submission of verdict forms, the better practice would have been the submission of a simple not guilty verdict form, but the explanation of the court clearly covered all possible verdicts. I concur with the lead opinion that there was no error in this respect.

Denecke, C.J., and Peterson, J., join in this specially concurring opinion.

**LENT, J.,** dissenting.

### I.

### A.

I am unable to join in the lead opinion in finding that there was evidence sufficient to allow the jury to consider whether the defendant was "under the influence of an extreme emotional disturbance." The evidence summarized in the lead opinion shows that there was taking place an exciting and dangerous event involving the use of firearms by the police officer and the defendant. There was evidence that members of defendant's family and his girl friend were very frightened by the officer's conduct, and I am willing to concede that the jury could infer that defendant was aware of the fright of those other persons.

The lead opinion rejects the state's contention that defendant's testimony that he was scared, amazed and taken aback referred to the time the shots were being fired. My reading of the transcript indicates to me that the testimony is ambiguous and could be construed to mean that defendant was scared, amazed and taken aback by the officer's conduct at the time the shooting was transpiring. I shall assume for the sake of this opinion that defendant was "scared, amazed and taken aback" during that time.

Defendant's brother testified that the officer threatened to kill defendant if he did not return the .38 to

the officer. The brother was asked what defendant did at that time and answered:

"He stood up, just looked at him like he thought the dude was a lunatic. He was stunned because — everybody was stunned."

This evidence will permit a finding that defendant was stunned just before the shooting started, and I am willing to assume that condition carried on into the time of the shooting.

At the time after the shooting had ceased the officer had restrained defendant's girl friend at or near the motel office. She testified that at that time defendant looked "rather shocked." I shall assume that he looked rather shocked while the shooting was going on.

Defendant testified that after the officer had fired two shots from the .45, defendant fired the shotgun into the air "to let him know I had a gun and that it was loaded, you know, that he should leave." He testified that the officer then fired another shot, that defendant did not know where it went, but that it "startled" defendant. There is no evidence as to how long defendant remained startled, but that very word carries a connotation of brevity.

In summary, I am willing to accept that there is evidence that during the time the shooting incident was proceeding, defendant was startled, shocked, stunned, scared, amazed, taken aback and was aware that those dear to him were very frightened by the officer's conduct. All of that, however, does not present sufficient evidence to justify a rational factfinder to find beyond a reasonable doubt that defendant was under the influence of extreme emotional disturbance. *See Jackson v. Virginia,* 443 US 307, 99 S Ct 2781, 61 LEd 2d 560 (1979). I come to this conclusion for two reasons: (1) Assuming that evidence to be sufficient to support a finding of emotional disturbance, it falls far short of satisfying the statutory requirement that the emotional disturbance be "extreme." (2) There is no evidence sufficient to justify a rational factfinder to find beyond a reasonable doubt that defendant acted "under the influence" of his emotions. There is no evidence to justify a finding beyond a reasonable doubt that his reason was overborne or that loss of self-control resulted in his firing the shotgun.

The lead opinion discusses the history of the statute to show that the term "extreme emotional disturbance" was intended to mean something broader than the old "heat of passion" concept attendant upon earlier versions of the crime of manslaughter. Except for a quotation from *People v. Ford,* 423 NYS 2d 402, 404, 102 Misc 2d 160 (1979), a New York *trial court decision,* however, the lead opinion pays no heed to the presence of the adjective "extreme." That quotation does attempt a description of the required emotional state by reference to "intense feelings, such as passion, anger, distress, grief, excessive agitation or other similar emotions." I shall assume that the defendant's emotional state here rises to the level of anger or distress, yet every feeling of anger or distress does not rise to the level of *extreme* emotional disturbance.

The lead opinion makes no effort of its own to enlarge upon the meaning and significance of the adjective "extreme" even though this court has not yet spoken to that point. The Court of Appeals had done so in *State v. Akridge,* 23 Or App 633, 635-636, 543 P2d 1073 (1975). The court there approved a trial court instruction which had informed the jury that

"in determining what the term 'extreme' means with reference to extreme emotional disturbance, I instruct you that the term means the outermost or furthest; most remote in any direction; final; or last."

23 Or App at 635. In the case at bar, the trial court quite obviously followed the lead of *Akridge,* for on this point the court instructed as follows:

"There are varying degrees of emotional disturbance. Not every disturbance is an extreme emotional disturbance under the law. In determining what the term 'extreme' means with reference to extreme emotional disturbance, I instruct you that the term [means] the outermost or furthest, most remote in any direction, final or last."

I believe the lead opinion should inform the litigants in this case and the bench and bar generally that this court endorses that or a similar characterization of the meaning of "extreme." The lead opinion says there is no need for that on the record in this case. If "extreme" should be given the dictionary meaning used in *Akridge* and by the trial judge in the case at bar, it becomes very clear that the evidence here falls short of that meaning.

On my first reason for disagreement, therefore, I believe it is clear that the word "extreme" has to be given some significance; that it should be given the dictionary meaning in light of the absence of any other definition by the statutes; and that the evidence falls far short of showing this defendant's emotional disturbance to be extreme as so defined. As the Court of Appeals said, emotional disturbance described as "scared," "amazed," "taken aback," etc., does not rise to the level of "extreme." The lead opinion says that from "the circumstances" it may be inferred that defendant was extremely emotionally disturbed. That opinion does not tell what manifestation of such disturbance, other than pulling a trigger, might be inferred.

### B.

My second reason is that even assuming that defendant's emotional disturbance was extreme it did not have that effect which is necessary to make an attempted homicide an attempt to commit manslaughter rather than murder. I rely upon the same authority as does the lead opinion, but I certainly interpret it differently.

The lead opinion has quoted from *People v. Ford, supra,* where that trial judge quoted from an earlier opinion of another trial judge. I repeat the pertinent part of the quotation for ease of reference:

"[E]xtreme emotional disturbance is the emotional state of an individual who: * * * is exposed to an extremely unusual and *overwhelming* stress; and * * * has an extreme emotional reaction to it, as a *result* of which there is a *loss of self-control* and *reason is overborne* by intense feelings, such as passion, anger, distress, grief, excessive agitation or other similar emotions." (Emphasis added.)

423 NYS 2d at 404. The parts of the quotation to which I have given added emphasis demonstrate that the author was aware that the disturbance must be such as to overbear reason and to cause a loss of self-control on the part of the defendant, i.e., to influence him.

The lead opinion draws attention to the Criminal Law Revision Commission's Commentary to the Proposed Criminal Code considered by the 1971 legislature. In that Commentary at page 89, the Commission makes it clear that the term "influence of extreme emotional disturbance"

is derived from the Model Penal Code. The comment in Tentative Draft No. 9, page 48, of the compilers of the Model Penal Code contains a discussion of the fact that the term was deliberately chosen to avoid the application of the old rules of law which had grown up around the concept of provocation and heat of passion with respect to manslaughter. In summing up what the critical difference between murder and manslaughter would be the comment states:

> "The question in the end will be whether the actor's *loss of self-control* can be understood in terms that arouse sympathy enough to call for mitigation in the sentence." (Emphasis added.)

That comment was quoted at page 89 by Oregon's Criminal Law Revision Commission. At a later date, in the final version of the Model Penal Code and Commentaries, the American Law Institute at page 63 has reworded the sentence:

> "In the end, the question is whether the actor's *loss of self-control* can be understood in terms that arouse sympathy in the ordinary citizen." (Emphasis added.)

The critical issue has been, and remains, evidence of "loss of self-control."

The lead opinion nowhere points to any evidence that the defendant's reason was overborne or that he acted out of a loss of self-control. Indeed, the evidence discussed in the lead opinion does not permit a finding beyond a reasonable doubt of anything other than that the defendant kept his head when all about him were losing theirs and did not lose his self-control.

I can find no evidence in my own search of the record to justify a rational factfinder to find beyond a reasonable doubt that defendant was under the influence of extreme emotional disturbance. I fear that the lead opinion's proposed holding in this case would serve as the authority to require giving a defendant's requested instruction on manslaughter in any murder prosecution if the evidence shows that the defendant is involved in an affray and that he is scared, amazed, taken aback, startled, shocked and/or stunned and is aware that his dear ones are very frightened, regardless of whether these emotions caused his reason to be overborne or caused a loss of his self-control.

## II.

Having concluded that the trial court erred in submitting the charge of attempted manslaughter to the jury, I must turn to the state's contention that if such error is found, it is harmless.[1] The state's argument is as follows:

"Even if the court erred in instructing the jury on attempted manslaughter, such error worked in defendant's favor rather than to his prejudice. Attempted murder is a Class A felony. * * * Both attempted intentional manslaughter and attempted assault in the first degree are Class B felonies. * * * The sole distinction between attempted murder and attempted intentional manslaughter is that the latter is committed while the defendant is under the influence of an extreme emotional disturbance. Both offenses require a finding that the defendant intended to cause the death of the victim. In contrast, the difference between attempted murder and attempted assault in the first degree is that the former requires a finding of an intent to kill while the latter requires a finding of intent to cause serious bodily harm. In returning its attempted manslaughter verdict, the jury necessarily concluded that the defendant acted with intent to kill. Thus the jury could not have found defendant guilty of attempted assault in the first degree. If, as defendant now contends, he was not under the influence of an extreme emotional disturbance at the time that he acted, then he is guilty of attempted murder rather than attempted intentional manslaughter. Accordingly, the giving of the manslaughter instruction, even if error, inured to the benefit of the defendant."

The state relies upon two decisions of this court and two decisions of the Court of Appeals: *State v. Gray,* 46 Or 24, 31-32, 79 P 53 (1905); *State v. Hood,* 225 Or 40, 48, 356 P2d 1100 (1960); *State v. Smith,* 1 Or App 153, 161-164, 458 P2d 687 (1969); and *State v. Miller,* 6 Or App 366, 371-372, 487 Pd 1387 (1971).

In *State v. Gray, supra,* the defendant had been indicted originally for murder and was found guilty of manslaughter. On appeal this court reversed and remanded for a new trial. *State v. Gray,* 43 Or 466, 74 P 927 (1904). Upon the second trial the case was tried and defended as a prosecution for manslaughter, and defendant was convicted of that crime. On second appeal he contended that

---

[1] The Court of Appeals found error in the same respect in which I do, but that court made no express determination as to whether that error was harmless.

the trial court erred in instructing on excusable homicide on the ground that excusable homicide "is outside the testimony." This court held that the instruction was favorable to the defendant because from the giving of the instruction an inference could be drawn that there was some evidence tending to show the killing was excusable. The court reasoned that defendant could not have been harmed by this instruction which suggested to the jury that the killing might have been excusable.

*Gray* does not present the same question as that presented here. It is true that in *Gray* the court instruction concerned a matter which would have absolved the defendant from guilt completely. The defendant was found guilty of the crime charged and the jury must have rejected the unwarranted opportunity to absolve him.

In *State v. Hood, supra,* the defendant was charged with, tried and convicted of the crime of assault with a dangerous weapon. The trial judge apparently instructed upon "lesser crimes" of Assault and Battery While Unarmed by Means of Force Likely to Produce Great Bodily Harm and Assault and Battery Not Being Armed with a Dangerous Weapon. This court disposed of his claim of error as follows:

> "The jury found the defendant guilty of neither of the crimes which the judge said were included in the charge stated in the indictment but of the crime which was actually charged. Thus, if we may assume that the quoted instruction erred, it afforded the defendant additional opportunities for the improvement of his condition and could have done him no harm."

225 Or at 48. *Hood* is not in point because even if the other crimes on which the trial court instructed were not lesser included offenses, he was found guilty of the greater offense. I shall turn to the language concerning "improvement" of the defendant's condition later.

In *State v. Smith, supra,* the indictment charged that defendant did "purposely and of deliberate and premeditated malice, kill one Christ Anton by shooting the said Christ Anton with a pistol." Although defendant denied that he was the killer, the evidence was overwhelming that he was the person who shot the victim while

robbing him. The trial court instructed the jury that if it found the state had failed to prove first degree murder beyond a reasonable doubt, it could find defendant guilty of second degree murder if it found that he purposely and maliciously shot the victim. In instructing on second degree murder, the trial court gave an inapplicable instruction on the meaning of malice. The defendant did not except to submitting second degree murder to the jury. He excepted only that the definition given by the court was inapplicable as applied to the kind of malice with which Oregon's murder statutes were then concerned. Defendant was convicted of second degree murder. The Court of Appeals stated that only first degree murder should have been submitted to the jury. The court, relying upon *State v. Hood, supra,* held that the alleged error in definition of malice did not harm defendant because only first degree murder should have been submitted.[2] The court reasoned that the jury necessarily found that defendant had shot and killed the victim while engaged in the commission of a robbery and therefore was guilty of first degree robbery under the state's felony-murder theory. From that the court concluded that the error in misinstructing on "malice" did not harm defendant.

There are several puzzling things about the decision in *Smith.* I cannot tell from either the decision or the briefs, Oregon Briefs, vol. 1874, whether the jury was instructed on first degree murder as charged in the indictment or only on felony murder insofar as the crime of first degree murder was concerned. The transcript is no longer available to us. Second degree murder differed from "ordinary" first degree murder in that the absence of premeditation and deliberation in a homicide that would otherwise be first degree murder made a killer guilty of second degree murder only. The briefs show that the trial judge drew that to the jury's attention in telling the jury of the elements required to establish second degree murder. If the decision means that defendant should be convicted of a crime, an

---

[2] This holding is at least questionable in light of this court's decision in *State v. Wilson,* 182 Or 681, 189 P2d 403 (1948). In that case the defendant was indicted for felony murder, and this court reversed his conviction because the trial court failed to instruct on the lesser "grades" or "degrees" of homicide, namely, second degree murder and manslaughter.

element of which was misdefined to the jury, I do not agree with the decision, and I fail to see how this court's decision in *Hood* supports the decision in *Smith.*

*In State v. Miller, supra,* defendant was indicted and convicted of the murder of a storekeeper during an armed robbery. Defendant had testified that he had been a party to a plan to commit the robbery and had gone to the store for that purpose. He testified that after he had gone into the store and purchased some gum he came out and informed his accomplice that he didn't want to go ahead with the robbery. He testified that the accomplice assented and then entered the store and shot the victim. Defendant requested instructions on second degree murder and man-slaughter and on attempt to commit the "three grades of homicide." The trial court instructed upon premeditated first degree murder and apparently on the other "grades of homicide" but not on attempt. The Court of Appeals held that the instructions on the "included grades of homicide" were unnecessary but harmless to defendant, citing *State v. Smith, supra,* as authority. As to the refusal to instruct on attempts, the court pointed out that defendant's own theory was that if he was attempting to commit any crime, it was robbery and not homicide.

*Miller* does not seem to present anything pertinent to resolution of the case at bar, except perhaps its implied approval of *Smith.*

In summary, *Gray* is a case in which the defendant was convicted as charged and complained only of the giving of an instruction which was not warranted by the evidence but could only have served to exculpate him of guilt altogether. In *Hood* the defendant was found guilty of the greater offense even though the court instructed on some crimes which may or may not have been included in the greater offense. In *Smith,* defendant was convicted of a lesser degree of crime than that charged, when he was held not to be entitled to submission of the lesser degree. His only claim of error, however, did not go to the submission of the lesser included charge but to its definition, and I disagree with the decision. *Miller* is completely foreign to the issue here.

The state's argument, as a matter of logic however, is at first blush appealing. As the state points out, the

verdict of attempted manslaughter necessarily encompasses a finding by the jury that defendant intentionally attempted to cause the death of the officer by shooting at him with a shotgun. If this was shown to have occurred while the defendant was not under the influence of extreme emotional disturbance, the state had established the elements of attempted murder. Because, however, the jury was permitted to consider whether the defendant was under the influence of extreme emotional disturbance and did so find, the elements of the crime of attempted manslaughter were established. It is tempting to say that the error in submitting the charge of attempted manslaughter "improved" defendant's condition because the effect of the error was to deprive the prosecution of a conviction of attempted murder, a Class A felony, and because of the error defendant has been convicted of only a Class B felony.

The problem inheres in the way in which the statute treats the existence or nonexistence of the influence of extreme emotional disturbance. The state took the position that the statutory framework required the state to prove beyond a reasonable doubt that the defendant was not under the influence of extreme emotional disturbance to obtain a guilty verdict of attempted murder. The jury was so informed. The state took the position at trial that to obtain a guilty verdict of attempted manslaughter, the state had to prove beyond a reasonable doubt that defendant was under the influence of extreme emotional disturbance. The jury was so informed.

The state further took the position at trial that attempted manslaughter was a lesser included offense of attempted murder. There may be types of manslaughter described in ORS 163.118 and 163.125, of which that would be true. For instance, a charge might be made that a defendant intentionally committed a criminal homicide while not under the influence of extreme emotional disturbance, but the evidence would support either a finding that he acted intentionally or a finding that he acted recklessly under circumstances manifesting extreme indifference to the value of human life. Since recklessly denotes a less culpable mental state than intentionally, it would seem both murder and manslaughter as defined in ORS 163.118(1)(a) should be submitted.

With respect to manslaughter as defined in ORS 163.118(1)(b), however, I have serious doubts that it can be considered as a lesser included offense at all. It is not lesser in the sense that criminal trespass may be a lesser included offense in a charge of burglary where the jury may find that the intent to commit a crime at the time of the unlawful entry has not been proved. It is not a lesser included offense in the sense that a lesser rather than a greater culpable mental state of the defendant existed. Rather, the difference in the two crimes lies in the state's obligation to prove one or the other of two diametrically opposed facts. If the state proves all other elements of murder but fails to prove the absence of influence of extreme emotional disturbance, the result is not a conviction of manslaughter as we are here concerned with that crime. The result would presumably be the same as in any other case in which the state failed to prove an element of the crime; the defendant would be entitled to an acquittal.

To return to my thesis that the difficulty inheres in the statute, I would point out that this is a criminal case and that each element of a crime must be proven beyond a reasonable doubt. To convict this defendant of attempted murder the state would have to prove beyond a reasonable doubt that he was not under the influence of extreme emotional disturbance. To convict him of attempted manslaughter in the first degree the state would have to prove beyond a reasonable doubt that he was under the influence of extreme emotional disturbance. That the evidence was insufficient, as a matter of law, to prove beyond a reasonable doubt that defendant was under the influence of extreme emotional disturbance *does not compel* the conclusion that the evidence was sufficient to find beyond a reasonable doubt that he was not under the influence of extreme emotional disturbance. The evidence might be such that the factfinder could not find beyond a reasonable doubt that the necessary condition either existed or that it did not, yet one of those conditions had to be proven by the state to obtain a conviction. If the evidence had been in equipoise or merely preponderated one way or the other, the state was not entitled to a conviction on either charge.

The concurring opinion labels this result as absurd, and I agree, but the absurdity inheres in what the legislature has enacted. Undoubtedly, the legislature could have

written the law as the concurring opinion interprets it, but that the legislature did not do, as the state realized when it successfully requested the trial court to instruct the jury that in order to prove attempted murder, the state had to prove absence of the influence of extreme emotional disturbance but, in order to prove attempted manslaughter, the state had to prove defendant was under the influence of extreme emotional disturbance.

Moreover, the supposition that the jury would have convicted defendant of attempted murder had this case been properly presented is not all that clear to me. This jury might be likened to the customer at the cafeteria. There were three[3] main dishes offered: (1) Attempted Murder, (2) Attempted Manslaughter I, and (3) Attempted Assault I. The customer chose the second dish. That dish was placed among the choices by mistake. Had it not been there, who is able to say which of the other two dishes might have been selected by the customer? This court in the past has noted that we are unable to say what a verdict might have been had the case been properly presented. *See State v. Naylor,* 291 Or 191, 629 P2d 1308, 1311 (1981), and *State v. Davis,* 70 Or 93, 140 P 448 (1914).

To accept the state's argument that the error is harmless, I should have to say to this defendant,

"Although there is no evidence to support an essential element of the crime of attempted manslaughter, namely, that you acted while under the influence of extreme emotional disturbance, nevertheless, I find that you have been duly convicted of that crime because you were lucky and the trial court 'improved' your position by its error. I trust that will be of great comfort to you while doing your time."

As a judge, I am not willing to say that.

### III.

Defendant's remaining claim of error which deserves attention is that concerned with the verdict forms and the court's instructions there concerning. This trial was not one upon an indictment in two counts; rather, there

---

[3] I shall have something further to say about the fourth offering, Not Guilty of Attempted Murder, later in this opinion. I would note at this point, however, that the jury was offered no form of verdict which, by its express terms, enabled the jury to return an out and out verdict of "Not Guilty."

were two separate cases. In one case the defendant was charged with the crime of being an ex-convict in possession of a concealable firearm. In the other case he was charged with the crime of attempted murder. Those two cases were joined for the purpose of trial, but each case, of course, retained its own title and clerk's number.

The record upon this appeal does not have with it the verdict forms which were submitted with respect to the case involving the charge of being an ex-convict in possession of a concealable firearm, so we have no way of knowing what title and clerk's number were on the forms of verdict submitted on that charge. The four forms of verdict submitted in the case concerning attempted murder are before us, however, and have upon each form the trial court clerk's number 115,743. The record before us does indicate that the trial court clerk's number for the other case was 116,441. I believe that one might safely assume that the two forms of verdict submitted on the other charge and case bore the correct trial court clerk's number.

According to the transcript, the trial judge submitted two forms of verdict with respect to case number 116,441:

"We, the jury in the above-entitled criminal action find the Defendant guilty of Ex-convict in Possession of a Firearm.

"We the jury, in the above-entitled criminal action find the Defendant not guilty of Ex-convict in Possession of a Firearm."

On the other case consolidated for trial, the trial judge submitted four forms of verdict as described in the lead opinion. In neither case, it is seen, did he submit a simple verdict form substantially as follows:

"We, the jury in the above entitled case, find the defendant not guilty."

The statutes provide, however, that just such a form should be submitted. ORS 136.455 provides:

"A general verdict upon a plea of not guilty is either 'guilty' of an offense charged in the accusatory instrument, or 'not guilty.' "

Submission of the simple form above suggested would have made it clear to the jury that, by voting for and signing that

form, they would be finding the defendant "not guilty" of all of the three offenses submitted for their consideration.

Perhaps the trial judge did not wish to submit such a simple form because he feared the jury would become confused with respect to the two cases being tried. The trial court clerk's numbers on the verdict forms should have prevented that possibility. Those numbers are certainly not so similar as to admit readily of confusion.

In any event, the defendant took timely exception to the instructions concerning the verdict and the forms submitted. I believe that the defendant properly raised the failure of the court to submit a form of general verdict finding the defendant "not guilty" in case number 115,743. The exception was as follows:

"I object also to the instruction about the verdict form which was given to the jury. I object to the instruction that says, 'you are instructed if you do find from the evidence and beyond a reasonable doubt that the Defendant committed the crime of Attempted Murder or less degree of the crime of Manslaughter in the First Degree or Attempted Assault as I have defined those degrees for you then the Defendant is not guilty and you should return a verdict of not guilty on each of these charges'. *However, the jury wasn't given a not guilty form.*

"THE COURT: I think you'll find at that point I explained the verdict form was self-explanatory.[4]

"MR. MILLS: However, I believe the jury should have been given a verdict form that said not guilty for the crime of Attempted Manslaughter and a verdict form that said not guilty for the crime of Attempted Assault in the First Degree. Although his Honor did explain how it is, for them to return a verdict of not guilty on all charges I believe the fact they only have a guilty verdict form for two of the charges is prejudicial and they should have been given a not guilty form for each of those also." (Emphasis added.)

The lead opinion holds that defendant's contentions that these instructions and forms were misleading should not be considered because he didn't bring the matter to the trial court's attention at a time when it could still be corrected. I most strongly disagree. He specifically complained of the

---

[4] I disagree with the trial judge that the forms were self-explanatory. For instance, there were no instructions or explanations on the forms such as we commonly see in comparative fault cases.

failure to submit a "not guilty form," cf. ORS 136.455, and after the court defended the instructions and forms, defendant advised the court of his contention that not guilty verdicts should have been submitted for each of the three charges submitted to the jury in connection with the case involving attempted homicide. I find the exception to be timely and adequate.

The lead opinion takes the position that ORS 136.455, providing for the jury to have a form of verdict finding a defendant to be "not guilty," is modified by the immediately following section of the code, i.e., ORS 136.460:

"Upon a charge for a crime consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the accusatory instrument and guilty of any degree inferior thereto or of an attempt to commit the crime or any such inferior degree thereof."

My first answer is that this section does not in any way deal with the forms of verdict. The statute deals rather with the power of the jury to find a defendant guilty of an attempt or lesser degree of a crime "consisting of different degrees * * *."

The section is not applicable to a choice between (attempted) murder on the one hand and (attempted) manslaughter on the other hand. The crime of murder is not a "crime consisting of different degrees." This is clear from *State v. Wilson,* 182 Or 681, 189 P2d 403 (1948), a case cited by the lead opinion for a different point. In that case this court was dealing with the criminal statutory scheme at a time when murder was a crime consisting of two degrees. That scheme also provided for a crime known as manslaughter. The court pointed to what is now ORS 136.455 as authority for submitting to the jury the two degrees of murder and pointed to what is now ORS 136.465 as authority for submitting other "grades" of homicide, namely, in that case, manslaughter. ORS 136.465 provides:

"In all cases, the defendant may be found guilty of any crime the commission of which is necessarily included in that with which he is charged in the accusatory instrument or of an attempt to commit such crime."

The court having thus correctly differentiated between the subjects of the two sections, namely, (1) crimes consisting

of different degrees, and (2) lesser included offenses, inexplicably went on to discuss the submission of different "degrees" of homicide. There was no crime of homicide.

In the case at bar, if attempted manslaughter could be submitted at all when the defendant was accused of attempted murder, it could not be under ORS 136.460, but rather, under ORS 136.465, as a form of attempted criminal homicide included within that form defined as murder. As I discussed earlier, I have grave doubts that, as defined at the time with which this case deals, manslaughter was a lesser included offense under a charge of murder. The defendant did not raise that point, however, and I needn't examine it further.

I think the defendant's exceptions concerning the forms of verdict submitted are an adequate basis upon which he might argue that the court's instructions were confusing and contradictory. They were confusing and contradictory to me, at least upon a first reading. The jury had no opportunity to re-read them, let alone read them. The jury only heard them. Whether I am confused is, of course, not the test, but I would challenge anyone to paraphrase correctly those instructions on a first hearing, or even a first reading.

Had the trial court in this case simply heeded the defendant's complaint that it had failed to submit a plain, old "not guilty form," defendant would have no cause for complaint upon this particular score.

I agree with the Court of Appeals that the trial court should be reversed and the case remanded for another trial.